Final case for this morning is James Daher v. Mark Sevier. Ms. Castro. May it please the Court, Leah Castro on behalf of Appellant Mr. James Daher, Jr. This is a case about due process, and due process entitles everyone, including pro se litigants and prisoners, the right to a fair hearing, complete with discovery, before their claims are dismissed due to failure to exhaust administrative remedies. At issue here is a two-step process instated by the magistrate judge in which defendants were able to take discovery before the PAVI hearing, but Mr. Daher was not entitled to take any discovery before that point. Now, could you talk a little bit about waiver? Because the government points out that when the magistrate judge announces that this is the way he's going to go about things, everybody says okay, including Mr. Daher. Now, he has asked for discoveries, I recall, before that. So how do you navigate that territory? Sure. Mr. Daher did agree to a two-step process, but the two-step process that was described to him was one where the defendants had to meet a burden, a failure to exhaust administrative remedies as an affirmative defense. And the magistrate judge explained that the first step would be that the defendants would be able to show whether they could meet that burden or not. If that burden was met, then they would move to the second step. However, that second step never happened, even though the magistrate judge issued a report and recommendations saying that the defendants did meet their burden. So you think that things went off the rails after phase one when the magistrate judge didn't say, okay, I'm satisfied with what the state has said. Now, Mr. Daher, you can go off and do your discovery and we'll have three months from now phase two or whatever. Correct. It was Mr. Daher's understanding that at some point before the issue was final, before there was an adjudication or at least a recommendation, that there would have been a discussion about does Mr. Daher need additional evidence to rebut that presumption. And that was explained to him multiple times by the magistrate judge when the magistrate judge was explaining this process. The magistrate judge said repeatedly that there might even be need for a second hearing and that this was not a denial of discovery, just a delay of discovery. However, that delay never came about. Mr. Daher, despite requesting discovery before the two-step process, after the two-step process, but before the payee hearing and then objecting to the findings or the recommendations of the magistrate judge, attempted to get discovery at multiple points, but that discovery was never allowed. He never had access to anything, including his own file at the jail. He was not able to evaluate or review any documents that the defendants possessed. So he has some serious things he needs to rebut, because the magistrate judge and the state take the position that he's submitting fraudulent documents. Yes. And Mr. Daher does not deny that the two return of grievance forms look very similar. Look very similar. He understands that, and it's been his argument throughout that there are two reasons for that, first being that Ms. Barnes, the individual in charge of returning the grievance forms, routinely would identify, demarcate things identically, even if they were not responsive to the grievance in question. But would she just photocopy the same page? I mean, because when you look at, I guess this is the back of the red brief, when you look at the two forms, you know, given the distance between her signature and the line and all sorts of very particular details, I know it's in here somewhere, but anyway, particular details are identical. And that would be something that Mr. Daher would have been able to elicit more discovery and testimony on if he had had the chance for discovery. The issue here is it appears, and even the magistrate judge understood this, is that Ms. Barnes seemed to have typewritten Xs for two of the reasons and then a handwritten one. And another question I would have asked if Mr. Daher had been represented at that point is why are some things already typewritten if they're supposed to be responsive to grievances, specific grievances? So it's not a far stretch to imagine that maybe Ms. Barnes did photocopy. However, the issue here is not for us to determine whether Ms. Barnes was photocopying return of grievance forms. It's to evaluate whether Mr. Daher should have had the opportunity to obtain discovery to prove that point. Ms. Castro, can I ask you, you said this is about due process, and I think that's probably right, at least partly. But due process of law doesn't always require discovery, does it? That's correct. However, under failure to exhaust administrative remedies in Pavey v. Conley, discovery is contemplated before a case is dismissed for failure to exhaust. It's just a question, though. Are we talking about due process of law or the interaction of the Prisoner Litigation Reform Act and the rules of civil procedure? There is an interaction between the two, but even prisoners have the right to a fair hearing, and what a fair hearing constitutes includes discovery. One of the puzzles for me about the procedure here that I hope the State might also shed some light on is I understand the sequence, I guess. I had a little trouble understanding how Mr. Daher is supposed to cross-examine State witnesses effectively about this if he has not had discovery before the first step, hearing. I would have thought just ask for affidavits. Step one is do you have affidavits that can show, make this threshold showing, and then decide at step two whether you need an evidentiary hearing. And I agree with you, and I think what's before the Court is not to issue a ruling that two-step processes for discovery related to a Pavey hearing is never constitutional, never constitutes a due process. But there is a reason, I'm skeptical that it would be, because Mr. Daher, even if he was able to get discovery later down the line, would not have had access to a meaningful cross-examination at that beginning. We'd have to bring it back. Another issue that is important and that the Magistrate, Judge, and District Court failed to evaluate was whether failure to exhaust administrative remedies was available to Mr. Daher. And that was outlined in Pavey v. Conley 1 in 2008 and applied in Pavey v. Conley 2 in 2011. There is substantial evidence here that Mr. Daher may have received incorrect advice about what to do. This business, is it a classification appeal or conditions? Correct. And so when Mr. Daher was pursuing the informal resolution process outlined by the grievance procedure, he spoke with a caseworker who informed him that this was not an issue that he could grieve, that this was a classification appeal. And that constitutes something that this Court has said would be that the remedy is unavailable. And if the remedy is unavailable, substantively unavailable, that means that failure to exhaust was innocent. So that should have been something that was anticipated and contemplated by the Magistrate, Judge, and certainly by the District Court, because in Mr. Daher's objections to the findings of the recommendations, he explicitly brought up Dole v. Chandler and discussed availability as an issue. So for those two reasons, Mr. Daher's case should be remanded to the District Court, because we cannot allow a system where a plaintiff is promised discovery, a pro se litigant is promised discovery at a later date, and then that process is switched on him, and he never gets that chance. Are all these types of hearings, are they face-to-face or are they done remotely? They're in person. So Mr. Daher was brought to the Court and was there in person, although he did not testify. He was only left with 10 minutes at the end. And that 10 minutes was the last face-to-face? That was the last face-to-face, correct. Okay. I'll reserve the rest of my time. Thank you. All right. Thank you. Ms. McMath. May it please the Court. The State asked this Court to affirm for two reasons. One, the magistrate did not violate Mr. Daher's due process rights, and two, the Court correctly found on the evidence before it that Mr. Daher had not exhausted his remedies and was not innocent in not exhausting them. So I have trouble, not with maybe this procedure in the abstract, but with the way it unfolded here, because it does seem to me that Mr. Daher was promised a chance to present his side, to investigate his side, I should say, not present, to investigate his side. And he never gets that opportunity. The magistrate judge is rushing things along. He spends nearly two hours with the State's case. It's down to the final ten minutes, and it's very clear he wants to go eat his lunch. And Mr. Daher anyway has one hand tied behind his back, if not both, because he hasn't done any discovery. So I view this as a person who's trying, as a pro se person would, to preserve the rights. He presents this a million different ways to the prison, and somehow he's told at every turn, you didn't do it right, and now we're not even going to adjudicate this for failure to exhaust. Sure. The magistrate didn't promise him that he would get discovery after the first part of the hearing. But that would be even worse. If he's going to decide only on the basis of what the State says without any chance to rebut, let's say, this serious inference that the document was fraudulent, the question about what was done when, the question about what the first counselor said to him, under what rule of law does the court just take only the State's side? Well, no, of course he doesn't. And if that is what had occurred, then I think it's very clear there would have been a due process violation. But that's not what the record reflects in this case did occur. When they had their telephone conference planning out the Pavey hearing, the court asked Mr. Daher and the State, what discovery do you need? They were talking about wanting to take depositions and discovery and what witnesses they wanted, and Mr. Daher identified witnesses, two who were currently employed at DOC, one, Ms. Barnes, who was no longer employed. And the judge had said, DOC, can you give them the information he needs, make sure these people are available to him. And the State raised the concern, as for Ms. Barnes, who's no longer employed, can I provide her address, contact information under seal? We don't like to give offenders information. And it was at that point the judge said, okay, I'm seeing we could have security issues with granting Mr. Daher the discovery he wants at this point. Let's do it this way. State, you put on your evidence carrying your burden at the first part of our Pavey hearing, and if you have carried your burden, then at that point, Mr. Daher, we can, in better context, you'll be able to tell us more specifically what you need, and you explain that to me, and we'll provide you that opportunity. Right. See, here's, I think, what was in the magistrate judge's mind. If the State had put on its, or maybe at that point, if the State had put on its case and the magistrate judge decided, you have not made a prima facie case of failure to exhaust, we're moving forward, it's your affirmative defense, then Mr. Daher wouldn't have needed to go through all of this. The merits of his problem would simply have been adjudicated. That's not what happened. So, you know, branch number one terminates. Branch two happens. Okay, State, you have, in fact, cleared whatever initial hurdle you have. But he doesn't circle back to Mr. Daher to give him the chance to look into things. Well, he did circle back to Mr. Daher, and Mr. Daher, he specifically said, the State has rested. Mr. Daher, how do you wish to proceed? You've had the opportunity to cross-examine and get some exhibits in. That's when he has the 10 minutes. You know, he just kind of gives up at that point. And what do you have now? One way to read that is what are you ready to present today? Sure. Right now. Yeah, that's how I read it, actually. But the backdrop is that Mr. Daher had engaged in discovery prior to the hearing, prior to the telephone conference. In the record, there are interrogatories he had. In one of his motions to continue. Pavy discovery? I'm sorry? Pavy discovery? Exhaustion discovery? Yes. Asking Miss, I believe it was Miss Heishman, about grievance materials. So he hadn't gotten everything he wanted, clearly, no doubt about that. He had made requests for. And he also didn't have the chance to shape his discovery requests, as the magistrate judge wanted him to do, in light of what had happened during this phase one. Because he wouldn't have had the chance to do that until the state rests. And that's where the state says, Mr. Daher, at that point, decided I have tried. My position is that the electronic file system is unreliable, and that's the evidence that I need to rebut the state's case. He had tried to get information in relevant to that. The court had said, Mr. Daher, I don't agree that that's relevant, because it's not dispositive of the issue when we've got a paper record system in place as well, and the paper records don't exist. So it doesn't really answer your case, or prove your case to say that it doesn't exist in the electronic file, because the electronic file system isn't reliable. And I think that's really an important point. And to keep in mind, the court made a relevancy decision based on the information that Mr. Daher had been seeking, and to the extent he had some of it, the court said, I understand. You want to prove that it's unreliable, and maybe it is, but that doesn't rebut the state's evidence when there's this glaring evidence of no paper record, which should be there if you had filed it. And Mr. Daher never challenged the lack of a paper grievance form and unreliability of their paper records. And I think that is really the crux of the magistrate's position to say, the state's carried its burden, and Mr. Daher was left with, well, if my whole effort to prove this electronic system is unreliable isn't getting me anywhere with the judge, then no. I don't have anything else. I don't need any other evidence. There's nothing more I can do. And at that point, he gave up his right to engage in more discovery to rebut the state's case and have that second hearing. Does that mean it doesn't exist? I'm sorry? The information doesn't exist? The paper, there's no paper record in the state's, the DOC's. So electronic or not, it doesn't exist? It doesn't exist, electronically or paper, other than the exhibit that he attached to those papers. And DOC has never lost a piece of paper? Oh, I'm sure they have. But given all of the evidence presented, and again, keep in mind, Mr. Daher did cross-examine the witnesses that DOC brought, and there might have been limits to what he could have done without discovery. He didn't ask Ms. Barnes about the grievance and return that he had in front of her, his own, that he says she signed these. He never asked her about them. So even if he didn't have other grievances and returns that he could have brought in to ask her about, you've done the same here and here and here, he didn't even ask her about the ones that were at issue in this case. To the extent he did have another set of grievance and returns from another offender, the returns, in fact, didn't look exactly like what he claims she always does. So that undermined his efforts to, again, rebut the state's case. Mr. Daher is presenting this case as if he had no evidence, as if he had nothing to bring to the court, and the court made a determination only hearing the state's evidence, but that's really not the case. He admitted five of his own exhibits. He was able to cross-examine and elicit testimony from the witnesses in an effort to undermine the credibility of the state's case. I'm trying to imagine another context, Counsel, in which we would say there has been a fair hearing where the responding side has been told, I won't rule against you without an opportunity for another hearing and an opportunity for you to conduct discovery. And even what you seem to be saying is that participation in the first hearing amounts to waiver of the right to take on the second. No, I do not mean to say that because he cross-examined, he waived any effort to engage in more discovery and have another hearing. What I do say is he didn't tell the judge at the end of this, when the judge said, How do you want to proceed? Do you need other evidence? That was Mr. Dare's opportunity to say, Judge, I now need discovery. Did the judge make explicit, now or never, everything you've got, we're not going to have a further hearing? He did before they finished. After Mr. Dare had said, No, Judge, I don't have anything further. Then he said, We're done, right? That looks like a trap springing shut. It's perhaps not the best practice, but Mr. Dare was given an opportunity at the end of the state's case to say, Judge, I need my discovery now so that I can rebut what they said. Here's what I was wanting to get beforehand that you wouldn't let me, that would rebut this. It wasn't all what you told me isn't relevant, but he never said that. The judge had made it clear every time they had had, he filed a motion for a continuance, a motion for subpoenas. I'm sorry, I see my time is up. Thank you very much. I think we have your point anyway, so don't worry about it. Thank you so much. Anything further, Ms. Kestel? Initially, I think it's important that this court understands that Mr. Dare did not have the opportunity to have any discovery. He did issue interrogatories and requests for production, but those were never responded to. And that's what Mr. Dare explained to the judge, which is why he needed to pursue subpoenas, which were, again, never responded to. I'm sorry. Is that right, counsel? No, I believe in the record there is none of the products that were once responded to. One? I believe there is one. But there were other requests that were not responded to? Yes, I believe that's correct. Thank you. Mr. Dare was directed to direct his requests to Ms. Angie Heisch. He had attempted to direct requests to a multitude of individuals. Ms. Heisch did not respond to him. There is evidence in the record that one individual, not a named defendant, did respond, but not with substantial documents that would assist Mr. Dare in supporting his claim. Mr. Dare did have documents to enter as exhibits at the payee hearing, but those were the documents that were already in his possession, not documents that he was able to obtain during discovery. I think, too, it's important to note this issue of waiver, whether Mr. Dare rested at the end. That interplay between the judge, the magistrate judge, and Mr. Dare was clearly about do you have any additional evidence today, not do you need any more evidence or that this is the end. And as a pro se litigant, maybe we would say that an attorney should have objected at that point or preserved the right more fully, but Mr. Dare did his best with only 10 minutes remaining. And another point when we're talking about paper records versus electronic records, the electronic record is based on paper. So the fact that there was no paper record, an individual inputs that paper into the electronic system, so the two go hand in hand. Finally, Mr. Dare did agree to a two-step process, but that two-step process envisioned a second step where eventually Mr. Dare would be able to obtain some discovery to support his point that he did file a grievance on time and that the facility just didn't have a record of it. And that itself would be something that would rebut the presumption that he Thank you. All right. Thank you. And we thank you as well for accepting the appointment. Thank your firm. And it's a great.